Good afternoon. Illinois appellate court first district court is now in session. The first division, the Honorable Justice Michael B. Hyman presiding, case number 19-2519, People v. Victor Hudson. Good afternoon. My name is Justice Michael B. Hyman. With me is Justice Relia Paczynski and Justice Mary Ellen Coghlan. We will conduct ourselves as if we were in the questions. And if you would just finish your statement if you can, if we don't ask you to stop, and then answer our questions, we'd appreciate it. Ms. Punjabi, you have time to reserve for a rebuttal. How much time do you wish to reserve? 20 minutes, each side has 20 minutes. I'd like to reserve five minutes, please. Okay, thank you. Any questions before we begin? Not for me. Please introduce yourself, Mr. Herb, just so on the record. Sure. Good afternoon, Your Honors. My name is Justin Herb, Assistant State's Attorney, and I'm here representing the state, the people of the state of Illinois. Thank you. All right, may I proceed? May it please the court. My name is Deepa Punjabi, and I represent the defendant appellant, Victor Hudson. Mr. Hudson appeals his conviction for armed habitual criminal in a case where a firearm that was found in a bedroom was attributed to him. At Mr. Hudson's trial, the jury appeared to struggle with the evidence, expressing doubt and confusion on key issues in their mid-deliberation question. We're well aware of the fact, we've read all the briefs and read the record. So my question to you is, what is your strongest argument? You feel, and I mean, you may have a few, which one? Give me your top two. Or you can talk about all of them, just start with her. Sure. You know, they all kind of work together, because they all dealt with the jury being misled and misguided, really at every turn. So I would say the jury question, particularly about the definition of knowledge, and also the issue of the search warrant that the Mr. Hudson was not allowed to elicit that this search warrant was unrelated to his case. Given how thin the case, the case evidence was, both of these constituted reversible error, I believe. How was the search warrant related to his case other than explaining why the police were in the apartment or the house? Well, the problem is, it was unrelated to his case, but the jury's question, you know, the jury asked, why were the police there? Well, the juries often ask a lot of things, but unless there's a rule of law or some kind of precedent that the judge is going to allow the evidence in or respond in a certain way, you know, that's not a reason to allow evidence that would be otherwise inadmissible. You know, juries speculate all the time about things that, you know, understandably as a lay person, we can appreciate that they have questions, but as a matter of law, they're not going to get their answers because the judge is not allowed to do that. Yes, your honor, I understand what you're saying. So what I'm asking you is under what rule of law would the judge have been authorized in putting substance of the search warrant in the case and making the jury aware of that? I mean, from my reading of the record, it appears to me that the only significance of this warrant is that it gives the police a reason to be in there because clearly it had nothing to do with why the defendant was arrested. The defense argued that this was admissible, the fact that the warrant was, the contents of the warrant, the target of the warrant was admissible under the course of investigation doctrine and the scope of the course of investigation doctrine does encompass testimony regarding how and at what point or whether an is a suspect in a case. Now in Rivera, which is one of the cases that the trial court relied on, the appellate court there found that it was proper to allow the police to testify that they had a search warrant authorizing a search and targeting the defendant for the purpose of explaining the police conduct and investigatory procedure. And the appellate court explained in that case that the reason we allow this kind of testimony under the course of investigation doctrine is to prevent the fact finder from making any speculative negative inferences about the legality of the police conduct to clarify that. I think we all know what the law is, but my question to you is in this particular case, how does that apply? Because clearly, other than authorizing the police to be in the house, from my review of the record, that search warrant had absolutely nothing to do with the fact that the defendant was constructively charged with possessing a gun. So, but the question the jury asked indicates that they were speculating that it did. They were trying to figure out how this warrant had, how that fit in, in the case against Mr. Hudson and the defense was not actually seeking to prove that the police were in fact looking for Tommy Williams or were in fact searching for drugs. The defense was seeking to provide an accurate description of the investigation at that point as unrelated to Mr. Hudson or the gun to prevent the jury from jumping to any conclusions about the warrant meant in what it meant in the case against Mr. Hudson. And they were entitled to do so under the course of investigation doctrine, because it was the purpose. But what you're saying is it's not, it's not hearsay. It's not hearsay. Because it wasn't, it wasn't the truth of the matter that it was Tommy Williams in the drugs. That's correct. And the problem part of what heightened the prejudices here is that although the court allowed it in under the course of the existence of the warrant under the course of investigation doctrine, no limiting instruction was ever issued to the jury even after it was clear that the jury was ruminating on why they were told about the warrant and how did the warrant fit into the state's case against Mr. Hudson. The court did not at that point respond to tell them that the warrant was only to be considered for the limited purpose of describing the police's investigation and was not to be considered evidence of Mr. Hudson's guilt. So that only heightened the prejudice here in a case where the evidence was already very close. You know, we know that the state's sole evidence here implicating Mr. Hudson was the unmemorialized statement he was supposed to have made claiming ownership over the bedroom and the While the state admitted into evidence to utility bills in Mr. Hudson's name, unlike the proof of residency offered by Mr. Hudson, the state's bills did not specify whether Mr. Hudson resided on the main level or the basement level. And on the other hand, Mr. Hudson provided positive evidence that specified he did not reside on the main level of the house. This evidence consists consisted of the testimony of multiple witnesses, several documents he admitted one obtained in 2017 prior to the offense, the state ID that all addressed they were all addressed to Mr. Hudson at the basement, excuse me, the basement level of the address. And the state was unable to rebut this evidence except with this alleged unmemorialized confession. And this is not a statement that was made under trustworthy conditions. The circumstances under which the police kind of ran roughshod over this family would have exerted a coercive pressure that would have undermined the reliability of the statement attributed. But the statement was given at the station, which different place, later time, things had calmed down, right? So how can the what happened at the home, you're saying that's a how did that affect what happened at the station? Well, it was a different location. But I think the statement was given quite shortly thereafter, all of this had just transpired. So I think he still would have. I mean, I think he suggested I just I think he even testified at the there was something in his testimony at trial. Well, I had just been punched in the face by this. He was but he was punched in the face in his home when he came into the room with the police officers. And I don't know exactly how long it was till he was at a police station. But it was some time it wasn't. I mean, time passed before that occurred at the station with that being the interrogation. Yes, Your Honor, I don't think the record is crystal clear on the timing. But I don't think it was a very long time afterwards. What do you mean by not a very I mean, you know, talk about time, long, not a long time can be minutes or hours, depending. Sure, Your Honor. It certainly it would not have been just minutes after but I'm not sure the record was clear on exactly how long the time had transpired. But I also think this court should ask itself, does it make sense that Mr. Hudson would have known he was in possession of something illegal nearby, yet did not hesitate to get into a confrontation with the police? Is that really conduct from which you can infer that he had knowledge of something illegal in his possession? Or does that constitute evidence that is so improbable or unsatisfactory as to constitute a reasonable doubt? But I guess that's to speculate. I mean, that pure speculation, isn't that something for the jury to decide based upon the evidence? Well, I think that I think my brief does cite case law that says that you can infer knowledge based off the conduct of the defendant. And I think we really have to examine the defendant's conduct here and say, was was the fact finders conclusions here reasonable, and we don't even know that the jury was instructed properly. They seemed to not be clear on whether Mr. Hudson even needed to be aware of the gun to begin with to be able to find him guilty. You know, they appeared confused in this case about the requisite mental state and asked multiple questions about what it meant to have knowledge for the purposes of proving possession. Specifically, the jury asked if Mr. Hudson was unaware of the gun in the closet, is he guilty of possessing it? The jury also asked, does Mr. Hudson have to have knowledge of the gun in order to have an intention to control the gun? And the jury appeared to be confused then about whether Mr. Hudson was required to be aware of the gun to meet the requisite mental state. Now, we know that in general, knowledge is the awareness of the existence of facts that make a defendant's conduct unlawful. And there is an IPI that states the same. IPI 5.01B, which is the standard instruction used to define the mental state of knowledge, states that knowledge of a material fact includes awareness of the substantial probability that such fact exists. So this instruction would have very simply answered the jury's question that yes, according to this instruction, Mr. Hudson would have to have had awareness of the substantial probability that the gun exists in the closet in order to have knowledge of it. I'm confused by your argument because between B, 5.01B and 5.01C, we know that 5.01C is the one the court gave, correct? Yes, that's right. And the B was. Now, which one of those puts the greater burden on the state? Well, I know that the state argues that- I'm not saying what is your, I'm not asking, I'm asking from your point of view. I'm not asking for their argument. I'm asking which of those two puts a greater burden on the state? I mean, as a defense attorney, they're not the same. They're not the same. I agree. So there has to be one, probably there's a different reason. It may be a greater burden. When's a greater burden? Which one is a greater burden on the state? I think under these facts, 5.01B, there's a good argument that might've been the harder burden to me. Well, why would, under these facts, why? I'm not sure. I don't understand when. May I explain, Your Honor? Yeah, please. It's direct and clear. It seems to me a lot tougher to show. The, under the, under 5.01B, the standard definition of knowledge, it talks about knowledge of a fact includes a conscious awareness that the fact exists. And even under the statement, the state alleges Mr. Hudson made, he says he had forgotten about the gun. Does that constitute a conscious awareness? I don't, so I'm not sure that 5.01B wouldn't have been the harder definition of knowledge to me under these facts, where he's saying that he, he forgot about the gun. That's not a conscious awareness. And the jury didn't even really get a chance to consider whether he had a conscious awareness of the gun under these facts. Actual knowledge, wouldn't that be tougher? Because that's direct and clear knowledge, direct and clear knowledge versus awareness of a substantial probability, which to me seems something less. I think the problem with 5.01C is that it's not helpful to the jury's questions. It's, it's, it's defined rather unhelpfully in this context. Knowledge is direct and clear knowledge, knowledge that would lead a person to inquire further. I'm not sure what that means in this context. It's not responsive to the jury's question about what kind of awareness Mr. Hudson needed to have to be considered to have knowledge of the gun. It's 5.01B that speaks to what kind of awareness, and that's, that's would have been more responsive to the jury's specific question in this case. You know, our Supreme Court has held that a court's response to a jury's question has to provide clarification with accuracy and specifically would have addressed the jury's question about what level of awareness was required because it talks about awareness and a conscious awareness and what kind of awareness is needed to meet the mental state of knowledge. And so it was error not to provide this instruction because there is a real possibility here, as I see it, that the jury convicted Mr. Hudson without clearly understanding that he was required to have awareness of the gun to be Were there any other questions that I could answer for the other questions? Hearing none, you want to, for those reasons, I'd ask that this court either reverse his conviction outright or reverse and remand for a new trial. Thank you very much. Mr. Good afternoon. My name again is Assistant State's Attorney, Justin Herb, and I'm here representing the people of the state of Illinois. May it please the court. Beginning with defendant's people failed to prove his guilt beyond a reasonable doubt. This argument is meritless and should be rejected by the people provided ample evidence that defendant resided in the third bedroom, either primarily or at least frequently enough that he would know that there was a firearm in his closet. Wait, wait, wait, wait, wait, wait, wait. Ample evidence. I don't see ample evidence here. When you have bills from the basement, we have people testifying about the basement. Uh, they're, they're, you know, it, you say ample, uh, you know, they say it's close, uh, big difference of being close and ample. And in this case, it seems to me that, uh, close, uh, is, uh, more accurate in light of, uh, what was presented to the jury. Why would you say ample? Your Honor, to clarify the people's position, there was certainly conflicting evidence in this case. There was the evidence, as Your Honor pointed out, that there were bills, or I, I apologize, not bills. There were, uh, ID cards showing that he lived in the basement. Uh, there were testimony from both defendant and his family that he lived in the in fact, live in the bedroom. Both of them are ample evidence. So, I mean, if you're going to have it that way and say your side, you know, the bedroom is ample, but the other isn't, I think we could use the word ample for both, which makes it a close case. I mean, you have the ID, voter registration versus some bills. Uh, bills usually come to a house. They, you know, uh, I don't know if there were separate, uh, bills for the, for his basement versus the rest of the house, but in any event, uh, it went to the house and they had his name on it. Your Honor, it wasn't simply just the bills. There were also the fact that defendant had medication for his gout condition in the bedroom, and there was also a confession. But it's all, it's all circumstantial evidence. There's, there's that, that, that is there, you know, people have built, I, people can have pills anywhere in the house. That doesn't prove that somebody, and you know that, it, that even with other evidence, does not establish that that was his residence. That, that, was he in and out of the, was it possible he was in and out of that room? Yeah, possible. But that it's residence because, uh, does that mean somebody resides in the bathroom because their pills are in the bathroom? Of course not. So it doesn't matter where you pill, people have pills all over the place. Well, Your Honor, to briefly respond, there's, uh, it'd be unusual to, at least in the people's version, it'd be unusual to keep one's pills in another person's bedroom. But regardless, the people agree that this wasn't a case that was completely, overwhelmingly one-sided. This was a case with conflicting evidence. This was, uh, certainly a case where the jury had to make a credible, uh, a credibility determination. And in this case, the jury did make a credibility determination. It weighed the evidence and found that despite the conflicting evidence, that the people proved their case beyond a reasonable doubt. Um, and to note quickly, the jury seemed to not find this case particularly close or, or, uh, struggled to find that the, the people met their burden in this case. They sent a note to the court after saying that the law was clear and the evidence was sufficient. However, they found that the circumstances of this arrest were unfair and asked that the court take that into consideration during cert, uh. But I think, I think that's just, that's, you're just focusing on a couple of, I mean, there were four inquiries, all different. You're focusing on a couple, but it's much, it's broader than that. And I think that raises the whole question of which I think you're getting to with regard to the warrant, uh, because that's a very important part of all this is their concern, uh, about what was going on here. Well, Your Honor, getting to the search warrant, uh, the jury did ask the question of where the warrant went to and, or I apologize, whether the defendant was the subject of warrant and the court gave the very reasonable and correct instruction that that's not in the. Wait, wait, wait, wait, wait. It's, it's, is it, uh, is it hearsay? Your Honor, it's not here. Well, let me back up. Uh, the fact that there was a warrant, the fact that a warrant existed and the fact that the police were there to serve a warrant was not hearsay. That is simply course of conduct and it's not there to prove the truth of the matter asserted. The purpose for that we're doing at that address at that time to get into more information about that, such as well enough. And it was the subject of the warrant and what specifically the police were looking for is that's when it, as the court correctly found, that's when it starts getting at the hearsay. These would be, well, let's, let's live, analyze it, uh, that that's whether it's correct or not, that that's hearsay. Uh, as I discussed, uh, with counsel for the defendant, uh, the truth of the matter asserted is not, uh, being, um, shown that is that the Williams, uh, was, uh, had drugs in that house, whether Williams was in the house. I mean, he's, he wasn't in the house, uh, had to do with Williams and it was about drugs, not about guns. Uh, so you're what, what in this case under these facts, isn't there a big mystery there and actually the jury very sharply, uh, understood that there's a mystery here. And that's why they inquired about it. They were, they, what are they doing here? You know, what's going on here when, when people, police burst in like this and this situation happened, there is a reason. And if, if there's no explanation other than say, there's a warrant, what are, what would a reasonable person conclude? Well, tell me what you think a reasonable person would conclude that, uh, the warrant had nothing to do with anybody in the house. Is that, is that reasonable? I think a reasonable person would conclude that there was a search warrant for that house as to the facts. Well, well, but for that house as to what, to a gun, this case is all about a gun. That's the only thing they hear about gun. They don't what are they supposed to think that all they hear about is Hudson and drugs, Hudson and drugs and the warrant had nothing to do. They weren't there because of Hudson and drugs. I mean, Hudson and guns. That's that why they brought them there. So doesn't that give a false impression? It's as if the jury doesn't think, I mean, we know here we have a thinking jury. They were concerned about this and it, it left a gap in their understanding of what was going on. So that what would the conclusion of a reasonable person be in that situation that they were looking for the mother? Would that be reasonable? Would they be looking for the son? What, what, what do you, what they were looking for? Uh, they were looking for, uh, medicine or they were looking for stolen, uh, televisions. I mean, the whole, the evidence was about guns. You're you're honored to, uh, to get, uh, if first, even if, if the jury would conclude that there, there was a search warrant and given the absence of evidence and given what we've heard, clearly the search warrant must've been for the defendant and it must've been for a gun, uh, to begin the contrary to what a defendant argued that court gave a limiting, did give a limiting instruction there. The court instructed them that that fact isn't an evidence. It shouldn't be considered by us to what the search warrant was about. Second, that would have no bearing on the decision of whether or not he's actually guilty of the crime, uh, whether or not the warrant was for him or it was for somebody else or any one of the, I, if memory serves five or six people who are at the house at that time, uh, that would have no bearing on the question of whether or not that bedroom was defendant's bedroom, whether the police were telling the truth when trying to confess that it was his bedroom and whether he knew that there was a gun in that closet. Um, yeah, move, uh, if there's no further questions on this subject, if, if we can move to the knowledge instruction. Okay. Um, yeah, your honor, as, as your honor noted during the previous argument, there's really no question that the answer to what, what is knowledge in this context of actual knowledge is far more restrictive and to the point in this case than to give the instruction for constructive knowledge or willful knowledge. The operative difference here between the two cases is that actual knowledge is defined very simply, very he knew that there was a gun in that closet. Um, on the contrary, the preferred instruction by defendant would be that he was consciously aware that his conduct is of that nature or that those circumstances exist, or if there's a strong probability of that, um, if the facts of this case did not lend to that instruction, there was no question about whether defendant had a strong possibility of the gun existing in the bedroom. It's simply, did he know that the gun was in the bedroom? Uh, considering the people, the evidence that was actually brought out in this case and the people's arguments, this instruction was far more simple, far more direct and far more on point than the other. You make a very interesting point. Uh, I appreciate it too. Uh, the fact that, uh, C is simpler than to be in the context of this. Well, I think in any context, I think when, when you read it, it's so much easier to understand actual knowledge definition. It's a, it's a very simple statement. The other instruction, uh, of constructed knowledge is not as easy for lawyers, let alone lay people to understand because the language is more complicated. Uh, it's more, uh, dense. Uh, it, it, it's longer. Um, and it takes a lot more thinking to figure out what the heck that is. So there could be certain advantages that could mirror to the fact of using a simple instruction. You know, it's not the fault of the judge of the instructions. One is written simply and the other is more complex, but it might go to where a jury would understand. And people's minds usually try to look for the most, uh, the easiest thing to understand. I mean, we, we, that's how our minds work. If it's more gravitate towards the easy, that's why lawyers like to make easy arguments, the more complex takes more work to try to get there. So I think that's a good point. Thank you. Um, now I would also like to just briefly note on the knowledge that going back to the jury's question, there's a, uh, implication that the jury had been confused during their deliberation. I believe that the, an examination of the questions that certainly the note at the end would show anything, but the, as I said before, the jury note said we did not come by this decision easily. Although the law is clear and the evidence is sufficient, the circumstances for Victor are unfair. Um, this would indicate to a reasonable person that the people's position, at least the didn't want to find defendant guilty. And they were looking for ways to try to understand the law such as a way that it could get out of this unfair situation and could not because they, as the jury said, the law is clear and the evidence is sufficient and they did not come easily by this decision, but nevertheless they did. Um, and if there are no questions on the, uh, final topic, which was the question of the gun registration instruction, then the people would simply ask that this court affirmed defendants conviction. Thank you very much. Thank you, your honor. Um, the state urges that the evidence was ample. Um, I think actually the jury's note reflected the weakness of the evidence. It's, it's the stat unusual statement of reservation accompanying the jury's verdict actually stated our deliberations were difficult. This was not easy for us. Um, and so this was not an ample, strong, overwhelming case. Appellant maintains that the evidence here was not sufficient, but even if this court finds that the weaknesses in the state don't here, don't merit outright reversal. Um, this court should find at a minimum that it rendered, rendered the other ear errors here to be reversible error. Um, particularly this, this issue with the search warrant, you know, defense counsel sought evidence that fell properly within the course of investigation conduct doctrine, um, testimony describing the investigation. Um, and they sought it for a non hearsay purpose. It was wrongly denied. Um, it, the, it, the, what defense counsel was asking for here actually fits very neatly within the established purpose of the police course of which in Rivera, this court explained is to provide a complete enough description about the police investigation in such a way as to prevent any misleading inferences that might arise, which is what occurred here, which is why the defense wanted to, um, prevent any speculation that this warrant somehow was evidence of, um, Mr. Hudson's guilt. And again, you know, the state says there was a limiting instruction, but they were not told that this was only to be considered for the limited purpose of describing the police course of investigation and was not to be considered as evidence of Mr. Hudson's guilt. And this was particularly dangerous in a case where the state's evidence against Mr. Hudson was so weak. And so then, um, what about the jury may have filled in? What about the fact that, uh, to the jury's mind, this is a case had to do with a gun, not with drugs, correct? And the jury's mind. That's correct. Okay. So if it has to do with guns, considering what happened, uh, when the police entered, uh, and they had altercation, I'll call it, uh, which is, uh, a euthanism for what happened to the son. And then when the, his father comes in the room, the defendant, another, uh, physical confrontation. Now, if you're looking for a gun, uh, that that's serious stuff as opposed, if it's drugs, uh, nothing about a gun, then maybe, you know, you wouldn't expect police to do that normally, uh, to act that way, which may have led to some of the, so isn't the fact that this is a case about a gun, uh, is aggravated by what was preceded it, which makes the, the nature of the search warrant even more important to disclose. I agree your honor. It only would have been more to the defendants. Um, it would have been at more adverse to your opponent. Oh wait. Okay. I apologize. I Okay. I don't want, I don't want you to miss anything. All right. I apologize for interrupting, but I didn't want. So your honor, that's correct. And so because of how this transpired, this only would have caused the jury to engage in speculation that, uh, negative speculation potentially against the, um, my client and this, you already have a case where the evidence is pretty weak and thin. So the jury may have filled in the gaps in the state's case with these inaccurate speculative inferences that the warrant somehow meant that they were looking for Mr. Hudson. And this is, this is evidence somehow of his, of his guilt. Um, well, if you were going to do that, then aren't you relying on the truth? Oh, this, this, they're not looking for guns. They're looking for drugs. I mean, isn't the only value of that, the truth of what's in the warrant? I don't believe so. Your honor. Um, the defense was not actually seeking to prove that the police were in fact looking for drugs or in fact, looking for Tommy Williams or John Smith or whoever the defense was seeking to provide an accurate description of the warrant and investigation at that point as unrelated to Mr. Hudson or the gun. So as to prevent the jury from jumping to any conclusions about the warrant, what the warrant meant in the case against Mr. Hudson, just as I understand what you're arguing, but what I'm trying to figure out is what case supports admitting the substance of a search warrant for that purpose. Um, well, there were cases. You do concede. I assume that the substance of warrant had absolutely nothing to do with the charge in this case of armed habitual criminal or anything to do with a gun. It only had to do with, um, with preventing the jury from making a misleading inference. Um, it, it was the defense sought this information just as the state seeks to under the course of investigation doctrine to, to, um, enter the existence of the warrant. So as in this case, this court described in Rivera, so as to prevent fact finder from jumping to any conclusions about the legality of the conduct here, if this was sought to describe, provide accurate description of the investigation. So as to prevent the fact finder from making any misleading inferences, um, about, or jumping to any conclusions about what this warrant meant in Mr. Hudson. But in this case that had absolutely nothing to do with the crime charged, but the jury thought it might have. And the whole point is to provide a, a complete enough description. So as to PR of the investigation, so as to prevent those kinds of misleading, um, that kind of misleading speculation. And what case do you, what is your best case for your argument that if the jury is somehow confused about the charges pennied against the defendant, then the contents of the warrant come in. I think the jury's questions surely shows that they were trying to divine the relation of, of the warrant against Mr. in the case against Mr. Hudson, see how it fit in. Was it evidence against Mr. Hudson? As far as a specific case, you know, these are unusual circumstances because usually it's the state who's trying to get evidence in under the course of investigation doctrine. And that's usually noticed that in reading all these cases, right? Exactly. And so there was a good reason for that, but, but there, so, and this is unusual because the defense is trying to get evidence in under this doctrine, but listen, the doctrine should apply impartially to both sides. You know, and I know this is unusual because it's the defense side that's trying to get evidence in under this doctrine, but it should apply. In my view is that he has nothing to do with the charges against the defendant. That's what I consider to be unusual, but, but I understand, I understand what you're saying. Justice Coughlin, the purpose of getting about an evidence in under this doctrine though, is to prevent the kind of speculation that it seems that the, that defense counsel saw this coming and tried to head it off at the past by filing this motion in limine. And when the court denied it, prejudice did accrue as evidenced by the jury's questions, their wheelstart attorney, how was this evidence against Mr. Hudson? What was this warrant about? And, you know, even at that point, there was a chance to mitigate the prejudice by at least instructing them that the warrant evidence was not to be considered a substantive evidence of Mr. Hudson's guilt and should only be considered for the limited. What if there hadn't been any questions, what would your argument be then? I would say that it still would have been error to deny this evidence that was sought for a non-hare say purpose and did fit on this doctrine. But I think the question certainly shows that the prejudice that defense was trying to prevent did occur here. Were there any other questions I could answer for the court? No. If you please conclude. Well, in that case, I would respectfully ask that this court reverse Mr. Hudson's conviction outright or reverse and remand for a new trial. Thank you very much. I want to thank both of you for excellent briefs and excellent argument this afternoon. Appreciate your professionalism and your arguments. We will take the matter under advisement and it will be forthcoming and we will be in recess. And I thank everyone very much.